IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| HOKE RUTHERFORD JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | Case No. 1:13-cv-200 (WLS) |
| | : | |
| INTERIM FUNDING | : | |
| CORPORATION, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

### ORDER

Before the Court is Plaintiff Hoke Rutherford's Motion for Default Judgment. (Doc. 6.) For the reasons that follow, Rutherford's motion is **GRANTED**.

### I.   Procedural Background

Plaintiff Hoke Rutherford, Jr., ("Rutherford") filed suit on December 23, 2013, against Interim Funding Corporation ("IFC"), on the basis of diversity jurisdiction, for claims of malicious arrest and malicious prosecution. In his complaint, Rutherford alleges that IFC caused a magistrate judge to issue a warrant for his arrest, without probable cause, resulting in his arrest, detention, and prosecution. Rutherford seeks compensatory and punitive damages.

The case is before the Court on Rutherford's Motion for Default Judgment. The record reflects that Rutherford served IFC on December 30, 2013. After IFC failed to answer the complaint or otherwise defend the action, Rutherford moved for an entry of default. The Clerk of the Court entered default. On April 7, 2013, Rutherford moved the Court for a default judgment.

The Court held a hearing June 10, 2014, to determine damages and to establish the truth of the allegations in the Complaint. After testimony and evidence, the Court granted

1

the motion for default judgment and told Rutherford it would issue a written order reflecting its ruling and setting forth the amount of damages.

To date, IFC has not entered an appearance or defended this action.

### II.     Factual Findings

The Court makes the following findings of fact based on the well-pleaded allegations in the Complaint, which are deemed admitted, and the evidence in this case. Hoke Rutherford is a 57-year-old resident of Tifton, Georgia. IFC is a corporation that has its principal place of business in Illinois. Around 2007, Rutherford owned and operated a used car dealership in Fitzgerald, Georgia, called Rutherford Used Cars. To finance his purchases, Rutherford borrowed money from IFC and signed promissory notes obligating him to repay the loans.

Around late 2007 or early 2008, Rutherford's business began to struggle. He soon became unable to repay his indebtedness and went into default. On February 22, 2008, IFC filed suit against Rutherford in the Superior Court of Ben Hill County, Georgia, claiming that Rutherford owed it $164,215.40, plus interest. The lawsuit did not allege fraud or other wrongdoing.

Insolvent, Rutherford filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Middle District of Georgia, on April 24, 2008. Rutherford's attorney sent a Notice of Bankruptcy Case to the Clerk of the Court for the Ben Hill County Superior Court. On June 27, 2008, IFC's attorney, Ben Mills, sent Rutherford's attorney a settlement offer that made a veiled threat about initiating a criminal prosecution. It read:

> My client, Interim Funding, is gearing up to take appropriate action against your client, Hoke Rutherford, in connection with the $164,000 they contend he has obtained unlawfully. We realize Hoke is in bankruptcy but it would appear that he has violated one or more criminal statutes in this connection.
>
> In the meantime, Interim is willing to make some reduction in the amount claimed by way of settlement and they have suggested that if Rutherford can pay $50,000 down, they will finance a balance of $100,000 over a period of time not to exceed 24 months, without interest.

> If there is any interest in this from your client, please let me know within the next ten days. Otherwise, we will assume that he is not interested in settlement and we will move forward with what we have to do.

On August 19, 2008, the Bankruptcy Court discharged Rutherford's debt. IFC did not appear in the bankruptcy proceeding or oppose discharge for reason of fraud or false pretense. *See* 11 U.S.C. § 523(a)(2) (prohibiting discharge of debts obtained through fraud). After the bankruptcy court discharged Rutherford's debt, IFC voluntarily dismissed the Ben Hill County suit. In addition, in a January 22, 2009 letter, IFC advised a Ben Hill County Superior Court Judge that "the case does not need to be placed on the trial calendar" because Rutherford's debt "was probably discharged."

Having lost his business and livelihood, Rutherford moved with his family to Galveston, Texas, on October 27, 2008, to build temporary FEMA housing for the victims of Hurricane Katrina with a friend's business. Shortly afterward, on November 6, 2008, IFC had a warrant taken out against Rutherford for theft by deception at Planter's First Bank of Fitzgerald. The affidavit in support of the warrant stated, in entirety, that Rutherford "obtain[ed] property, to-wit CASH, property of INTERIM FUNDING CORP. of the value of $164,215.00 with intention of depriving the said owner of said property, by the following deceitful means and artful practice: the said accused did knowingly and intentionally obtained [sic] currency from Interim Funding Corp., by deceitful means and artful practices with the intention of depriving the owner of said property."

Rutherford, however, did not borrow IFC's money with intent to deprive it of the property. Nor did Rutherford do anything to trick IFC or to obtain the loans in deceptive ways. To the contrary, Rutherford used the loans for his used car business and simply could not repay them when he fell on hard times.

Unaware of the warrant, Rutherford went with a crew to build housing in Bridge City, Texas, near the Texas-Louisiana Line and about two hour from Galveston. While at the worksite, in front of about ten coworkers, Texas Rangers pulled up and informed Rutherford he had a warrant for his arrest in Ben Hill County, Georgia. The Rangers approached Rutherford, pulled his arms from opposite sides, and slammed his head into the hood of a

truck. They then handcuffed him and forced him into the car. In the process, the handcuff tore into one of Rutherford's hands, leaving a scar. Rutherford did not resist arrest.

The Rangers transported Rutherford to a detention facility in Beaumont, Texas, where he stayed for seven days. Rutherford had never before been arrested. He was constantly scared. At the detention facility, where he was detained in a large dormitory with around 75 other people, Rutherford stuck out "like a sore thumb." One detainee, who went by "Scarface," threatened to kill him because he believed Rutherford was a drug agent. Scarface relented only after another inmate intervened and threated to retaliate if he harmed Rutherford. Rutherford watched one detainee choke another. He refused to even remove his glasses while he slept for fear that he would wake up and would not be able to see his attacker.

Meanwhile, Rutherford's wife and children tried to secure his release. Carolyn Rutherford, Hoke's wife, retained a Texas attorney and paid him $2,000. Before the attorney appeared, however, deputies with the Ben Hill County Sheriff's Department arrived in Beaumont to extradite Rutherford to Georgia. The sheriff's deputies placed Rutherford in leg irons and handcuffs for the duration of the drive. They stopped once during the fourteen-hour drive for Rutherford to use the restroom at a convenience store. In an orange jumpsuit, Rutherford shuffled through the store in his leg irons and handcuffs with police escort. He was humiliated. During the drive, Rutherford experienced a flare-up of gout, which caused his foot to swell "as big as a grapefruit."

Upon arrival in Georgia, sheriff's deputies placed Rutherford in the Ben Hill County jail. There, Rutherford could not obtain treatment for his foot and had to crawl from his bed to the toilet until his wife brought a wheelchair. While at the jail, Rutherford hired an attorney, Craig Cotton, to secure bond and defend him against the charge. In total, Cotton charged $7,410.58 for costs and fees.

Rutherford stayed in the Ben Hill County Jail for three weeks. On December 3, 2008, a judge ordered that Rutherford be released on bond. In his request for bond, Rutherford requested the court permit him to return to Texas for work. The court granted that request,

provided that he reimburse the Sheriff's Department $2,317.27 for the costs of his extradition. Rutherford paid the fee.

As for the underlying charge, the District Attorney for the Cordele Judicial Circuit never presented it to the grand jury and, on May 8, 2013, the office dismissed the warrant. The charge, however, remained pending for almost five years, and Rutherford never felt safe.

Prior to this incident, Rutherford had never been arrested, had never been charged with a felony, did not have any criminal convictions, and had a good relationship with law enforcement and the justice system. Rutherford served on grand juries on several occasions and, in April 2008, received a letter from a Superior Court Judge commending him for his service. Earlier in his career, Rutherford also ran a wrecker service and was the first wrecker in his area to have a radio in his truck to talk directly with law enforcement.

Moreover, prior to his arrest and detention, Rutherford was, with exception of his hereditary gout, relatively healthy. In Texas, Rutherford worked in manual labor and moved eighteen-inch cement blocks for hours each day along with his twenty-five- and thirty-year-old sons. Since then, however, Rutherford suffered two heart attacks. Rutherford attributes his heart condition to the stress he experienced because of IFC.

### III. Discussion

Rutherford alleges claims of malicious arrest and malicious prosecution. Under Georgia law, "[a]n arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested." O.C.G.A. § 51-7-11. To establish a malicious arrest claim, the plaintiff must show both the presence of malice and the absence of probable cause. *McKissick v. S.O.A., Inc.*, 299 Ga. App. 772, 777 (2009). Likewise, to prevail on a malicious prosecution claim, the plaintiff must show a "(1) prosecution for a criminal offense instigated by defendant; (2) issuance of a valid warrant, accusation, indictment, or summons; (3) termination of the prosecution in favor of plaintiff; (4) malice; (5) want of probable cause; and (6) damage to plaintiff." *Kaiser v. Tara Ford, Inc.*, 248 Ga. App. 481, 486 (2001); *see* O.C.G.A. § 51-7-40. "The 'malice' contemplated by law in an action for malicious prosecution is the same as in an action for malicious arrest, and may consist in personal spite or in a general disregard of the right consideration of mankind, directed by chance against

5

the individual." *McKissick*, 299 Ga. App. at 777. "For purposes of such claim, the prosecution must be carried on, which requires an inquiry before a committing court. If a person is merely arrested pursuant to a warrant, a claim for malicious prosecution will not lie." *McNeely v. Home Depot, Inc.*, 275 Ga. App. 480, 475 (2005) (citations and quotation marks omitted).

The Court concludes Rutherford has satisfied the elements of his malicious arrest claim. The evidence and well-pleaded allegations show that Rutherford was arrested after IFC had a warrant from a magistrate judge taken out against him for theft by deception. The evidence and allegations show there was a lack of probable cause. Rutherford intended to repay the loans and did not deceive or trick IFC when he applied for them, which he explained to IFC. There is no evidence IFC undertook any investigation to verify its allegation. Moreover, IFC did not allege in its civil suit or in the bankruptcy proceeding that Rutherford obtained the funds unlawfully. The warrant affidavit itself failed to offer a single fact to support probable cause. Moreover, the settlement letter evinces both malice and a lack of probable cause. It suggests IFC intended to retaliate against Rutherford if he refused to settle the dispute.

But the Court finds that Rutherford has failed to prove his malicious prosecution claim. In particular, Rutherford has not shown that he was prosecuted for theft by deception. While "an inquiry before a committing court or magistrate shall amount to a prosecution," O.C.G.A. § 51-7-42, Rutherford did not present evidence he experienced an inquiry before a court.[1] Rather, the evidence shows that the district attorney dismissed Rutherford's warrant without ever presenting it to a grand jury. And an arrest pursuant to a warrant, without more, is insufficient to establish a prosecution. *McNeely*, 275 Ga. App. at 475.

### IV.  Damages

Having found that Rutherford meets the elements for a malicious arrest claim, the Court now turns to damages. Rutherford requests $1 million in compensatory damages and

---

[1] Rutherford presented evidence he appeared for an initial bond hearing. But Rutherford did not describe or allege that the judge conducted an "inquiry" into the merits of his case. *See Farr v. Blackwell*, No. 2:11-cv-74-RWS, 2013 WL 1136948, at *3–4 (N.D. Ga. Mar. 18, 2013) (holding that plaintiff did not experience a "prosecution" because he appeared only for an initial bond hearing). This is not to say that Rutherford did not experience a prosecution, only that he has yet to prove it.

$2 million in punitive damages. The Court finds that $500,000 in compensatory damages and $2 million in punitive damages is warranted.

With regard to compensatory damages, Rutherford experienced both pecuniary losses and extreme emotional distress. Rutherford paid $11,727.85 in attorney's fees and court costs to obtain bond and defend against the charge. He is entitled to recover such expenses. *See Medoc Corp. v. Keel*, 166 Ga. App. 615, 616 (1983). Moreover, the Court is persuaded that Rutherford's loss of liberty, humiliation, stress, and extreme mental anguish entitle him to a substantial award. Because of the malicious charge brought against him, Rutherford spent a month in jail. While incarcerated, Rutherford deteriorated into a state of perpetual panic and fear. Another detainee threatened his life. In the Ben Hill County jail, Rutherford had to crawl to the bathroom because his gout prevented him from walking. After release, Rutherford remained in fear. Given the length of time of his imprisonment and the humiliation he experienced during the arrest and transportation, the Court finds that $500,000 is justified.

A $2 million award is necessary to punish and deter IFC for its willful, malicious, and egregious conduct. Rutherford has established by clear and convincing evidence that IFC's conduct was willful and malicious and made with specific intent to harm. Therefore, the punitive damages cap does not apply. *See* O.C.G.A. § 51-12-5.1. The Court finds it reprehensible that a financial institution would accuse a borrower of crime and seek to have him imprisoned solely because of a default. IFC's settlement letter all but outright threatened to initiate a criminal prosecution if Rutherford did not settle his claim. Defendant's obtainment of a warrant and Rutherford's arrest followed. Such conduct is not only unprofessional, but is also a flagrant abuse of the legal process and must be severely punished.

## V.     Conclusion

For those reasons, and for those stated in the hearing, Rutherford's motion as to his claim for malicious arrest is **GRANTED**, and his motion as to the claim for malicious prosecution is **DENIED**. There being no reason to delay partial judgment, judgment shall be entered on the malicious arrest claim in the following amounts:

- $500,000 in compensatory damages;
- $2 million in punitive damages.

**SO ORDERED**, this ___8th___ day of August, 2014.

                                         /s/ W. Louis Sands
                                         **W. LOUIS SANDS, JUDGE**
                                         **UNITED STATES DISTRICT COURT**